UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-80185-MIDDLEBROOKS

**UNITED STATES OF AMERICA,**

    Plaintiff,

    Vs.

**ELIZABETH GENNA SUAREZ,**
    f/k/a "Elizabeth Mirson Suit"
    **Defendant,**
_____/

## SENTENCING MEMORANDUM, REQUEST FOR DEPARTURE AND REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS

The Defendant, **ELIZABETH GENNA SUAREZ**, through counsel, files the following response and attached exhibits in reply to the Government's Response to the Defendant's Objections.

**CHARACTER LETTERS**: SUAREZ has submitted a wide range of letters regarding her character, both past and present, for the Court's consideration. The Government has challenged the authenticity of a number of these letters and is now requesting that SUAREZ be accessed a two-level increase for Obstruction. SUAREZ maintains that the sum and substance of the letters in question are factual. It is an error in judgment on the part of SUAREZ to have changed the date of the letters; however, it is the position of SUAREZ that no letters were edited as to their content without prior consent as to content. As an example, SUAREZ would point to JASON MARTINO who stated under oath "I Jason Martino did not write a full or partial letter of recommendation or character reference letter for Mrs. Suarez" when in fact an attached email exchange shows otherwise.

SUAREZ now clearly understands that she should have simply submitted these letters, previously written for the purpose of letters of recommendation, in their original form, and identified them as such. As for the letter written by Greg Tabeek, that letter was in fact initially used as part of SUAREZ's attempt to seek nursing employment opportunities through Indeed.com. SUAREZ did not understand that simply repurposing any letters from her past or present for another use was wrong, but understands how it could be misinterpreted as such and apologizes to the Court. Her intentions were to provide the Courts a well-rounded perspective of her life over the time. Additionally, SUAREZ changed the dates on the letters in question to reflect the dates she forwarded them to her counsel. However, SUAREZ did so without malice or intent to deceive the Court, but as a record of when they were being sent to undersigned.

The Government makes much of the date change and consented or speculated modifications but it is the belief of SUAREZ that these claims of unconsented modifications are disingenuous. That is not to say that these few individuals consented to the repurposing of their earlier statements or date changes. They did not; however, the substance of the letters was not changed and their current objections are the result of pressure from Paul Smolcek and his relentless harassment of SUAREZ even after SUAREZ made arrangements for the $150,000.00 plus payment. Such is exhibited by the attached text sent by Paul Smolcek that Captain Bobby Hooks received just after SUAREZ counsel filed a character letter written by Captain Hooks. The text included factual inaccuracies that make it clear that Mr. Smolcek's goal is to destroy any and all support and opportunity for SUAREZ to put her life back together in a positive way.

The fact is that when the Court reviews the totality of the letters written in the context of reflecting her past and present character the Court is better able to assess the defendant as a whole person and not simply based on an isolated period of time that has brought her before the Court for sentencing. These letters, despite the date changes inform the Court of "the history and

characteristics of the defendant," 18 U.S.C. 3553(a)(1), in a way that makes clear that she is not a threat of future criminal conduct that the people need to be protected from and will not appear before this Court again.

**ACCEPTANCE OF RESPONSIBILITY:** The Government implies that her letter of apology was disingenuous because of the implication that if she was to be arrested, no restitution would be made. Additionally, the Government implies that she attempts to minimize the breadth and depth of the situation. SUAREZ's letter to the board is proof as to how serious she took the mistakes and was a genuine letter of remorse for the unintentional mistakes she had made. Travis Suit, her husband at the time, knew several factors he could leverage against SUAREZ during this time. One, that she had recently obtained her dream career she worked her entire life to accomplish as a PBCFR firefighter in March 2019, and two, that her father was financially successful. Because of this leverage, Travis Suit exploited that leverage and placed SUAREZ with her back against the proverbial wall on multiple fronts. On one end, the Board of PAF, through attorney Michael McAuliffe, was making demands and threats without giving her a genuine opportunity or sufficient amount of time to review the allegations and individual transactions with her counsel present and have a forensic analysis done, despite the Government or Mr. McAuliffe's contention otherwise. It is interesting that the Government seeks to use the letter as an admission of responsibility for all the money alleged to have been lost while also denying it's use as a statement of acceptance of responsibility. On the other side she had her father, through whom she was trying to borrow the money to repay PAF, driving the bus with demands of his own, if he was to loan her the money – charges could not be pursued, and such, instructed her to include that in her letter of apology to the PAF board. This addresses what the Government refers to as a "threat", when SUAREZ was simply trying to meet her father's demands to obtain a loan to repay PAF.

She was able to borrow the money from her father, as indicated by the various communication with Mr. McAuliffe, payment was made to PAF through undersigned's trust account. The Government refers to Jeffrey Danik's "opportunity" to review charges before making an assessment. Jeffrey Danik testified that he provided SUAREZ with a summary based off of PAF's speculations and thus created by himself, and denied conducting a forensic analysis to determine if any transactions were factually SUAREZ'S. SUAREZ maintains that she did not admit nor deny the summary, as she wanted to have a proper forensic analysis conducted and review all transactions with her counsel prior to commenting to anyone including Mr. Danik. Both SUAREZ and Counsel were refused any opportunity at the time to review the credit card statements and transactions or question the accuracy of the charges being assessed to SUAREZ. Basically, a gun was put to her head and she was told pay what we say or else by this date. The Government claims her repayment was an admission of conduct, when in fact it was used as leverage against her. Needless to say, she paid and still got the "or else" several years later.

**LOSS AMOUNT**: The Government cites to testimony that substantiates the loss amount by primarily saying that SUAREZ accepted responsibility to whatever the Board said she was responsible for; however, as stated above, SUAREZ was never given the opportunity to conduct a forensic analysis as PAF refused to provide statements and transactions to her and her Counsel for review. SUAREZ maintains that she always said she wanted to make things right if she had made any mistakes, but needed to review everything in detail with her counsel first. Additionally, testimony also showed that much of what was paid for was in fact not to her benefit but was for the benefit of Travis Suit and/or PAF, specifically a large part of the Chase charges, as set out in Defendant's Objections, were related to PAF or Travis Suit. Travis Suit also admitted in testimony to using the Chase card that was in SUAREZ's name at times when he was missing his own Chase card as he testified that he lost his wallet often. Travis was also the one who paid the PAF Chase

credit card bill himself, as SUAREZ had nothing to do with paying PAF bills. The Amazon charges as well as the Casper mattress were purely speculative, as no concrete evidence or proof has been presented to support these allegations. As for the FJ Truck, the Government witnesses testified that the improvements to the defendant's truck were made after she had access to the PAF accounts. The Defendant's Exhibit 3 A and B make it clear that that is simply false. These exhibits make it clear that any improvements to the FJ existed in October, 2016 and January, 2017 prior to her involvement with the finances of Travis Suit or PAF and through an Autobody shop named "Infamous Customs" which does not appear on any statements in question. Additionally, SUAREZ maintains that she did not admit to the DV8 Motorsports transactions belonging to her as the work on her FJ was conducted years prior.

The Government sites the parsed-out line items SUAREZ provided as unbelievable due to the date discrepancies with the Porsche accident Travis Suit was involved with. SUAREZ did the best of her ability to recall memories from 4 years ago when going through the individual transactions that were only just provided to her through the discovery recently when this case came to be. This is what SUAREZ had requested to be given the opportunity to do with her counsel 4 years ago and was refused. The various payments to auto shops belonging to SUAREZ is speculative, the government has provided zero proof that these charges were not related to the van, actions of Travis Suit, and or his work with PAF. For example, in reference to (DE 50-1 at 2,3, 5) Irishman S Auto Body shop in fact has no record of SUAREZ'S FJ Cruiser (VIN# JTEBU4BFXCK131916) or her name in their system. This proves that SUAREZ did not conduct business at this Auto shop, but has been held accountable for the transaction because it was speculative. If this is the case for this transaction, how many more does this pertain to? The Government also refers to SUAREZ'S involvement with the bookkeeping software as proof of her intent to conceal the nature of the payments and transactions. In testimony, Nicole Byrd,

Templeton Accounting, confirmed that the APLOS software created "rules" and SUAREZ maintains that she did not code anything in the software to conceal transactions. If a rule was set, she did not change it. For example, (Government Exh. 8 at 82), the purchase of their family dog, was coded as "Program Supplies" (Government Exh 23, DE 35-16 at 12). The name of the merchant was "Fine Line Family K9". APLOS read the word "Family" and categorized the transaction as "Program Supplies" based on history and the software's rules. Another example is Government exhibit 12, which details payments to GPM Midland Credit, and APLOS simply read the words "Midland" and "Credit" and categorized those transactions as "Grants" and "Bank Fees" based on history and the software's rules. Travis Suit testified that he in fact needed credit repair. The accusation that SUAREZ edited the APLOS software to conceal anything is purely speculative.

In regards to the payments of the Joint Personal Bank of America Credit Card ending in 5481, the Government states that the frequency of the payments were a form of concealment, but it was found in testimony that SUAREZ and Suit were trying to purchase a home, and therefore, all bills, including the BOA credit card, were paid off multiple times a month to avoid any debt being reported to the credit bureaus. SUAREZ did not have any knowledge of notifications being sent with certain amounts being paid, nor was the primary person on the account, therefore had no reason to make multiple payments other than for the purpose stated above. The Government's accusations of concealment is yet again, speculative.

SUAREZ maintains that she never asked for a PAF credit card, nor the extra responsibility of bookkeeping as she had just recently been hired by PBCFR and had no time. Being the executive director, Travis Suit decided who to order credit cards for and asked SUAREZ to help him with the bookkeeping. Additionally, the Government refers to the trial testimony establishing that Templeton Accounting was recommended to the Foundation by Trey Mahoney, but fails to

mention the part of Testimony given by Nicole Byrd that SUAREZ was in fact the one who followed up with that recommendation and was in fact the person to onboard them as an accounting firm on behalf of PAF giving them full access to the accounts in their entirety.

The PAF investigation did no true forensic analysis of what was and what was not the responsibility of SUAREZ, which was confirmed in testimony by Jeffrey Danik. It simply poured everything into a pot and said this is yours to reimburse. It ignored any responsibility of it's CEO, and Executive Director, Travis Suit and what he may have actually done or what he may have been financially liable for in this matter. They turned a blind eye and did not want to hear anything that may have raised further questions on how this charity was ran. They simply believed Travis, who had everything to gain if SUAREZ was named the one responsible. Travis Suit was responsible for PAF's finances along with the PAF Board, so it is too absurd to be believed that Travis Suit did not notice $158,960 being misappropriated for his benefit. For example, Government exhibit 14 regarding the $10,000 check was deposited into the USAA personal joint checking account on July 1, 2019. Testimony by Travis Suit was that he received notification on his personal cell phone of this deposit. As this was a joint account, Travis could have transferred this money back to PAF's account at any time, but chose not to. On December 17, 2019 a wire out in the amount of $11,795 was sent to Travis Suit's personal checking account for his personal gain.

The purely speculative investigation that PAF completed was then turned over to the Government and as the trial demonstrated the Government simply accepted it at face value and presented it to the jury without any further analysis of the numbers and no forensic investigation being done. The Government has not provided any forensic proof to support their prosecution. All claims against SUAREZ are based off of speculation and conjecture. It wasn't until discovery was turned over in the criminal case, nearly 4 years later, that SUAREZ had an opportunity to see, line by line, what the charges were for in the credit card statements and transactions and what she had

been held responsible for. Even at this point, SUAREZ was not given an ample amount of time to have a forensic analysis conducted on her behalf to refute anything prior to trial. Therefore, SUAREZ maintains that she is not responsible for the full loss amount of the $158, 960.

**3553(a) FACTORS:** SUAREZ was a First Responder, Firefighter, Paramedic, RN and served in the Florida National Guard. She worked hard to raise money for PAF and was even described as the "Sponsor Monster" by the Government's own witnesses. She raised either directly or indirectly over $600,000.00 for PAF and she was dedicated to do so and would have continued to do so even after her divorce from Travis Suit. This matter separated her from participating in the Crossing and participating in an event that filled her spirit and PAF's coffers. The letters show that, despite the Government's assertions, SUAREZ is not someone who the public needs to be protected from as she will never be before the Court again, the fact that she has gone through this process and experience alone has provided adequate deterrence and probationary supervision certainly provides sufficient and just punishment. The charity was repaid the amount demanded of SUAREZ despite hindsight establishing that she was not solely responsible for what took place.

WHEREFORE the Defendant ELIZABETH SUAREZ moves this Court to depart below the U.S. Sentencing Guidelines and sentence the Defendant to a period of probation.

## CERTIFICATE OF SERVICE

I HEREBY certify that on April 3, 2023 I electronically filed the foregoing with the Clerk of Court using EM/ECF. I also certify that it is being electronically served on Alexandra Chase, AUSA, Office of the U.S. Attorney, West Palm Beach, FL.

Respectfully submitted,

/s/ **Gregg S. Lerman**
_____
GREGG S. LERMAN
Defense Counsel
Florida Bar No.: 510963
330 Clematis Street, Suite 209

West Palm Beach, FL 33401
(561)832-5770
GSLermanLaw@gmail.com